Please rise. Illinois County Court Second Division is now in session. I will just please have the bill provided. Please be seated. Good morning. As you can see, Justice Lewis is not here this morning. She will listen to the audio tape of this little argument. With that being said, will you please call the first case, please? 13-1874, People v. Maldonado All right. I'd like for the attorneys on People v. Maldonado to please step up to the podium. I'd like the appellant to go first. I want the attorneys to state their names, tell the court who you represent, and approximately how long your argument will take. Will both attorneys please step up to the podium? Good morning, Counsel. Good morning, Your Honors. My name is Karen Weiberg. I'm here from the State Appellant Defender's Office, and I'm representing the appellant, Lewis Maldonado. I would anticipate probably about a normal 15-minute opening, and I'd like to reserve five minutes for rebuttal. Very good, Mr. Weiberg. Good morning, Counsel. Good morning, Your Honors. Assistant State's Attorney Bianca Pucci on behalf of the people of the State of Illinois. I would be approximately 15 minutes needed this morning. Very good. Mr. Weiberg, you may proceed with your argument. Thank you. May it please the court, Counsel. Subject, of course, to any questions that Your Honors might have, my intention this morning is to focus initially on the State's failure to prove that Mr. Maldonado had possession of any of the items that were found in this shared residence, in this case. Moving on from that point, assuming the time does remain, I would like to address some of the issues regarding the informant in this case and some of the trial errors that took place. My Honors, Illinois law does not now and has not ever held a person criminally liable for every item that happens to be within a residence that they share with other people. Rather, the burden is on the State when they're seeking to prove constructive possession to prove that a person has both knowledge of these items and, of course, the intention to possess them. Now, cases have held in the past from this Court and others that, you know, where a person resides in an area, that can give rise to an inference that they have this sort of knowledge and this sort of intention towards some of these items. However, in cases more analogous to the present circumstances, in this specific situation we face here, cases like People v. Walton, People v. Walsky, People v. Fabeng, this Court has held that where you have a shared space, where multiple people are sharing this space, this Court will generally look for corroborating evidence, something that connects the defendant to the items in question. Because obviously we have multiple people, the inference that the defendant must know about everything that's in that residence is significantly weakened. And in this case, what we have is simply no corroborating evidence whatsoever. All we have is the fact that Mr. Maldonado did in fact reside in this house that he shared with his wife, her adult goddaughter, and at some point there was another person living there. Where did that evidence come from? Pardon me? Where did that evidence come from? Which evidence, Your Honor? Evidence that the State introduced no evidence of anybody living at that location. The only evidence about a daughter, goddaughter, husband, came from the defendant's wife that the Court found incredible. What's the State's evidence that the defendant even lived there? Well, Your Honor, there was a couple of letters that were found, a couple of items that had Mr. Maldonado's name on them that were found. We don't know where they were found in the house. There's no evidence of that. It was entered by stipulation that an officer searched the house. There were pieces of documents. Yeah, we have a few documents. A piece of junk mail. I think there was a receipt of some kind from, I want to say it was a discount store. Right. And something else. But yeah, a few pieces. We don't know where they were in the house. We don't know what condition they were in. At least one of them had Mrs. Maldonado's name on it as well. So that was really the only evidence that put Mr. Maldonado in the house, period. So given the fact that the State entered into that stipulation, did that excuse the State from having to prove some of the elements of the offense? You said he lived there. He was connected to the residence. Right. We absolutely agree. We're not contending that Mr. Maldonado was not in any way connected to the residence. But in cases such as, again, people v. Walton, people v. Fabin, people v. Walsky, what this court has held is that where you have someone who is in a shared residence, particularly here because we have a residence that's shared with at least two other adults, and particularly we have the adult goddaughter who isn't even related to Mr. Maldonado by blood or anything like that. And so we have separate private areas within this home. We have people going about their individual lives. So if you take a look at what Mr. Maldonado was doing, and you look at his house, this case, this court has generally said we need corroborating evidence in that sense. We need something that connects the defendant to the items that are at issue here. It's called evidence, right? Yes, indeed. The difficulty with these cases are the law requires proof beyond a reasonable doubt, not just showing up and saying this is the case of People v. Maldonado. When I read this record, I was astounded that the defendant's name was never mentioned in the state's case in chief. I've never, in 43 years of practicing law, I've never been involved in any case where a party's name was never in the record. Well, Your Honor, I entirely agree, and I shared some of your astonishment when I reviewed the evidence in this case, particularly because there was simply no connection of any kind from Mr. Maldonado to any of these items that were found in this home, to any of these items that were supposedly, well, were a contraband, as it turns out. Not the ammunition, because Mrs. Maldonado's void card had lapsed, the ammunition, I guess we're calling it a misdemeanor. No, it wasn't Mrs. Maldonado, Mr. Maldonado presented that evidence. But the stipulation doesn't provide some of this evidence that… No, Your Honor. Oh, pardon me. No. Your Honor, all the stipulation states is that an officer found three pieces of mail or three pieces of paper. Significantly, what the stipulation did not state is where those items were found. I thought the stipulation was three pieces of proof of residency. Ah, yes, I believe they used the phrase proof of residence, yes. And again, Your Honor, Justice Pierce is saying whose residency? Well, Your Honor, I think, well, I don't want to speak for Justice Pierce, I think perhaps the point he's getting at is in general just the paucity of evidence that was presented as to a whole and how minimal even the evidence of residency was. Now, Mr. Maldonado below did not contest residency, that is correct. However, again, when we get further into this case and we get further into the evidence, what we discover is that in point of fact of the three people who resided in that house, Mr. Maldonado appears to have been the least connected person to any of these items. How do we know anybody lived in that house when the trial court, the state presented no testimony, not even the defendant's name in their case in chief. The only witness who even uttered a name other than her own name was allegedly or purportedly the defendant's wife. And the judge said, I find her to be incredible. Now, we're supposed to follow the standard that we defer to the judge's determination of credibility. So we have the state's case, the state has the burden of proof, never mentioning a defendant's name in any way, shape, or form. We wouldn't know who was on trial if they didn't announce the case. And then we have a defense witness that the court totally dismisses. So why would we even think that anybody else even knew this place existed? That's the difficulty I have with everything in the case. And, Your Honor, I am perfectly in agreement with you on that subject. And I would say that insofar as I am addressing arguments beyond that, I am addressing those in the, shall we say, in the event that this court should conclude that, as Justice Neville was suggesting, that the stipulated evidence presented at least some minimal proof that Mr. Maldonado resided there, although he may simply have been there. But in the event that we accept that notion, that is why I've been presenting further arguments. I certainly agree with the point you're making. Okay, let's assume that the three pieces of documentary evidence allowed for an inference of control of the premises. Talk about knowledge. There you are. Knowledge is really the guts of this case because, again, as you noted, the burden is on the state. And what we have are not items that were found in plain view in common areas of the house where anyone who resided there would have to know about them. We have a small amount of heroin that was found inside of a small statue in the south bedroom. Now, we have no evidence as to what that south bedroom was used for. It's referred to as a bedroom, but we don't know. Is it storage? Does somebody sleep there? We have no testimony, no evidence about whether there were items of Mr. Maldonado's found in that room. We have no evidence. We have no testimony as to anything that would put Mr. Maldonado even in that room. No statements from him that say, oh, yeah, you know, I go in there from time to time. We have nothing. We have literally no evidence that Mr. Maldonado is connected to that room. So where we have a piece of contraband that is secreted away inside of a small statue in a room that Mr. Maldonado may or may not have ever really spent time in at all, the evidence is simply absent to prove knowledge at that point. There is simply no reason in the record beyond pure speculation to believe that Mr. Maldonado was even so much as aware that this heroin existed. And when we look at the rest of the contraband issues in this case, we find very much the same situation. We have a couple boxes of ammunition that were found sort of under a wig in the middle bedroom. And all we know about the middle bedroom, as Your Honor has pointed out, all we know about a lot of this stuff comes from Mrs. Maldonado's testimony. Now, the judge discounted Mrs. Maldonado's testimony, but insofar as it is the only evidence we have on this point at all, what Mrs. Maldonado's testimony states is that was Ms. Shields' room, her adult goddaughter. I think she was around 36 years old. And we do actually have one piece of evidence beyond that for that particular room, because the photograph taken of the ammunition shows a letter addressed to Ms. Shields sitting right next to the box of ammunition, and there's the wig and other female articles. So again, this is someone else's bedroom. There's no reason to believe that Mr. Maldonado is spending time, has any knowledge of the private contents of someone else's bedroom. The one piece of evidence, and again, this was presented by Mrs. Maldonado in this case, was Mrs. Maldonado noted, yes, there are some clothes belonging to him that are in the closet in that room. However, Mrs. Maldonado followed that up immediately by explaining and saying, I have a lot of clothes. I don't have closet space for all of them. I store family clothes throughout the house. She said, I put clothes everywhere because I don't have a lot of closet space. And she has a lot of clothes. And if you look at the photographs, you can tell there's a lot of items in that house. So the fact that someone else may have stored some items belonging to Mr. Maldonado in that room, it does not give rise to a reasonable inference. It doesn't provide us that evidentiary antecedent to say we can now infer that he has knowledge of and possession of any item that's in that room. We just don't have the evidentiary grounds to get there. Similarly, when we look at the ammunition that was found in the drawer in the kitchen, the ammunition there, it wasn't in plain view. The kitchen's a little bit of a common area, so we might think, okay, you're probably in there. But it wasn't out on a counter. It wasn't up on top of the refrigerator. It wasn't in a glass-fronted cabinet where perhaps anyone who walked in to get a glass of water would have to see this and be aware of it. It was inside a drawer in the center island in the kitchen tucked away somewhere. And again, we simply have no evidence that Mr. Maldonado has ever opened that drawer. He had only lived in the residence about four to six months at the time that this search warrant was served. Mrs. Maldonado had occupied the house for a great deal longer than that. And Mrs. Maldonado testified, it's my ammunition. I used to own guns. I had a Ford car. My Ford car had expired. I got rid of my guns, but I still had some ammunition around the house. But didn't the judge find her testimony incredible? Yes, he did, Your Honor. So what do we do with that? Well, Your Honor, insofar as Your Honor pointed out, virtually all of the relevant evidence in this case did come from Mrs. Maldonado. Virtually everything that tells us anything about what was going on in that house did come from Mrs. Maldonado. And insofar as the judge made a credibility ruling against that, we would contend that on that basis alone what we're left with is simply no evidence at all. It's not like by discounting Mrs. Maldonado's testimony we are left only with evidence implying guilt. In point of fact, we're left with evidence that shows nothing at all. But insofar as when we're talking about issues like Mrs. Maldonado claiming this ammunition and referring to her ownership of the statue, that does bring us back to some of the trial errors we raised because when the court reached this credibility ruling regarding Mrs. Maldonado, it was unfortunately based on testimony that did not take place. The court specifically identified two pieces of testimony that it found incredible, that it felt that just damaged Mrs. Maldonado's credibility beyond reason. But those two pieces of testimony never occurred. It found that it didn't believe that someone would leave four grams of heroin in a house and not come back. However, because of the other errors we pointed out, the trial court actually prevented Mrs. Maldonado from testifying that anyone ever had left heroin in the house or that anyone had had heroin in the house previously. That testimony just didn't happen. And so just on that level alone, the credibility ruling is somewhat inherently suspect. However, the trial court went on. When it talks about this fellow wouldn't be able to come back and get his heroin, why wouldn't he come back and get it? Well, the testimony that Mrs. Maldonado actually gave was that she put him out of the house. This wasn't a voluntary amicable split. What she said is, I put him out of the house. And unfortunately, counsel is prevented from eliciting more information than that. But insofar as that is the testimony, it seems inherently unlikely that someone who has been basically kicked out of the house they were living in would be allowed to come back in. And it seems somewhat unlikely to me that someone would come back and say, hey, I left some heroin in the house, can I come back and get it? But even if they did, where you obviously had a situation that ended acrimoniously, it seems unlikely that they would be allowed back in the home. So on that level, the trial court's credibility findings did suffer some problems. Well, the court's credibility findings in your judgment have problems. What is this court left with? We should find Mrs. Wilner Jackson, we should find her credible, or what should we do? Well, Your Honor, under these circumstances, I would say that this court is really presented with two options, which is to say we can entirely dispose of Mrs. Maldonado's testimony, as the trial court did below, but as Your Honor points out, if we entirely dispose of Mrs. Maldonado's testimony, there is essentially no evidence left at all. What we argued in our briefs is that Mrs. Maldonado's testimony on all of these points regarding her ownership of the ammunition, her ownership of the statue, all of those items, the residents, Mrs. Shields' residents in the bedroom, it was uncontradicted, it was unrebutted, and it was functionally unimpeached. The things that the trial court found incredible simply didn't happen. Under those circumstances, we would say that we have no reason on the record to disbelieve Mrs. Maldonado's testimony. And Mrs. Maldonado's testimony is that she owned that ammunition. It was hers. And her testimony... Could there be joint possession? Oh, certainly, Your Honor, there can be. But again, what we would be looking for there under Walton and Wolski and Fabeng, we would be looking for some corroborating evidence that would put Mr. Maldonado in some sort of possessory relationship to those items. And that's precisely what we're missing. And we can tell, in many respects, it's almost more instructive, I think, to look at some of the cases, the state sites, where the evidence was found sufficient. Because in every single one of those cases, what we have is we have corroborating evidence. We can look at People v. Cunningham. In People v. Cunningham, the defendant was found holding the key to a locked bedroom that contained drugs. So right there, he has a small subsection of the house that is locked away, excluding others, that he has the key to. And he himself was in possession of cocaine, and a fairly substantial amount of it, when he was gone. So we have corroborating evidence. We can look at People v. Bolton, which we feel is a very good case for us. People v. Bolton, this court was explicit. We need corroborating evidence. And there, it was a small car at issue, not a two-floor house. And you had two defendants, and the court said, we need corroborating evidence. But, of course, in that case, the defendant was present in a vehicle that fled from the police, ran on a high-speed chase, got in a crash. There was almost a kilo of cocaine in the car, which is a large amount to not notice. And the defendant himself was in possession of 96 plastic baddies in a grand scale. We look at all these situations, and we see corroborating evidence. We have paraphernalia associated with drug sales on the defendant's person. We have items in plain view where you would have to see them. We have the key to a locked bedroom containing contraband. What we have in Mr. Maldonado's case is nothing whatsoever. We have no evidence that connects him to any of these items that were found in the shared dressing room. Why don't you bring your argument to a conclusion, and you've got five minutes for rebuttal. Excellent, Your Honor. Also, in short, for the reasons discussed here, we feel that the evidence was simply plainly insufficient to find Mr. Maldonado guilty of any of these offenses. And for the other reasons discussed in our briefs, we would alternatively request a new trial and possibly an in-camera hearing regarding the informant issue. Thank you, Counsel. Ms. Pucci. Good morning again. Good morning. May it please the Court, Assistant State's Attorney, Bianca Pucci, on behalf of the people of the State of Illinois. The evidence here was sufficient to find the defendant guilty beyond a reasonable doubt of three counts of unlawful use or possession of a weapon by a felon and one count of possession of a controlled substance with intent to deliver. In viewing the evidence in the light most favorable to the people, any rational trial fact could have found the defendant guilty beyond a reasonable doubt. What evidence are you talking about? You said the evidence is sufficient to prove him guilty. What evidence? The defendant, there's three pieces of proof of residency that were added into the record. These three pieces of residency include an ABC bank mail addressed to the defendant at the address of 4459 West Washington Boulevard. Addressed to two people? To two, yes. The wife and the defendant. The second piece was... How would we know that it was the wife? How would we know that? What evidence did the State introduce to the trial court that the second name on the envelope was the wife? The State didn't introduce any evidence as to Roland Maldonado being the wife of the defendant. Right. But the proof of residency that was collected did have the defendant's name on it and I know, Justice Pierce, you brought up the fact that the stipulation itself does not state the defendant's name. However, and this case is not cited in our brief, but for additional authority on this issue, people beware, and I have the 2005 case, docket number 97659, states that the defendant can't go beyond a stipulation and there is no claim on appeal that the defendant's proof of residency was not proven at trial. Well, here, you know, I think we have a lot of law students in the audience today, in the courtroom. We deal in precision. Now, the way I look at the three documents, it wasn't proof of residency. It was three items found in the location of the search warrant that may allow for an inference of residency. Well, how would you agree that it allows perhaps for an inference? One may infer that an item mailed to a location bearing someone's name, there may be an inference drawn that that person resides at that location? If it was just a piece of mail that was introduced as a piece of mail that was recovered. However, here, the stipulation between the parties was that it was proof of residency. The actual statement was these three items are coming in as proof of residency of the defendant. See, there we get to the precision. That would be a state's argument. It would not be a defense argument, nor would it be an inference that an appellate court may draw. If the precise stipulation said these are proof that the defendant resided at this location, then we would have a stipulation to that effect. Okay, let's move on from there, okay? Yes, Your Honor. So those three items, as well as the wife's testimony here, which the trial court can reject portions of and accept portions of, did find the defendant residing in that residency. Well, which portion is credible? The portion that the defendant lives in the residence. How do we know that that was found credible? Because the wife testified that she is married to the husband, and husband and wife are usually living in the same home. Did the wife testify in the state's case in chief? She did not, no. So is that part of the state's burden then? What was before the trial court? When the state started and when the state rested, what evidence was there that this defendant was even ever in that location? The three pieces of proof of residency that were recovered at that location. Allowed for an inference that he physically was inside that residence because three pieces of mail were found at the house? Correct. In Cunningham, proof of residency is shown by evidence of mail, documentation of a person's name and address at that location. But your opponent says there's always a lot of corroboration that goes along with that proof. What's the corroboration in this case? The corroboration in this case is we do have mail holding in that room where the two boxes of ammunition were found. What's the connection of Mr. Maldonado to the federal? Well, we have an officer testifying that the clothing was mail's clothing as well as the wife's testimony that it was in fact the defendant's clothing in that room. So in doing the right most favorable to the people, the trial in here, that the trial court did find the defendant resided there and there was that corroborating evidence of the defendant's knowledge of the two boxes of ammunition that were in plain view in that one bedroom. And in Cunningham, not only was the defendant there found in constructive possession of all the items that were in that locked bedroom, he was also found in constructive possession of a large amount of cannabis that was found in another bedroom in the residence that was not locked in which a juvenile claimed ownership of that cannabis. The defendant in Cunningham carried keys to the house, was on the premises, had his driver's license on him at the time of arrest showing that address. There was mail and he told his parole officer, this is in evidence, and the officer that he lived there. Do we have any of that here? Well, we do have the evidence that he lived there through the wife admitting that the defendant lived there. Do you draw any distinction between the state's burden of proof and a defense witness who was found incredible? Does that ring a bell in any way? Well, in looking at the evidence we most favor to the prosecution here on appeal, the evidence was sufficient to find the defendant guilty. There was, in the total case, the defendant did live and reside at 4459 West Washington when the search warrant was executed. There was sufficient evidence to find that he resided there. And then there was a corroborating evidence of his clothes in the closet where the plain view ammunition was sitting right there where he would have to walk by to go get his clothes. Do we know through the evidence presented to the trial court, do we know when that ammunition and heroin were placed on the premises? We do not know that. Do we know in any evidence presented to the judge when, if ever, the defendant was physically present in those premises? We do not have any specific facts for that. So not knowing if he was ever in the house and not knowing when the contraband was placed in the house, tell me how the proof is sufficient beyond a reasonable doubt that the defendant controlled the contraband and he knew that it was within his control. I would say that because the wife also admitted that the defendant lives at that premise, that he lived there, he went there, so we do know that he was in that house at some point as his residence. And at that point in time, was the contraband there? Do we know that? From the record, it would be inferred that he was there, his clothes were in that same room where that ammunition was found. At what point? How can we infer that? I'm just trying to understand this. There's nothing in the record that specifically states the defendant was ever in that room at a specific time. I will agree with Your Honor that that is not in the record specifically. However, we do have the fact that the defendant resided there, his clothes were in that house, in that room, as well as the wise testimony that says he lived there. The evidence in viewing most favorable light to the prosecution on the view and all reasonable inferences to the prosecution, any rational trial fact could have found the defendant guilty of possessing all these items as he was in constructive possession. And even if, like Your Honor brought up earlier, joint possession is a perfect example of this case. Even though the wife claimed ownership of the ammunition, the defendant still had knowledge of that ammunition, which is evidenced by his clothing being in the room with the same. How do we know it was his clothing? Well, first of all, officers testified that it was male clothing, and the wife did testify that it was the defendant's clothing. So the wife herself admitted that the defendant's clothing were in the room in which the ammunition was in plain view. And that evidence is credible, that part? I would state that that part is credible, yes. But the other part is not credible. What is her ammunition? The trial court stated that ownership is not really the issue, possession is. And even if the wife was found to be the owner of the ammunition, the possession here was joint between the wife and the husband that lived in that premises. It was open in plain view, those items, and in Cunningham, however, there was a rollover of finding constructive possession of the cannabis in the adjoining bedroom, not adjoining bedroom, but bedroom as well, the downstairs bedroom in the residence. He was also found in constructive possession of those items, such as here the defendant would also be in constructive possession of the other ammunition found in the kitchen drawer, as well as the heroin found in the other bedroom. The defendant also brings up the trial court's decision in denying the defendant's motion to produce the informant. Here we have an informant whose information was the basis of a search warrant, which is very different than People v. Price, which is a surveillance location case. Surveillance location and informant's privilege, they are very similar, but they are also very different. Both of them have the same purpose of trying to protect the public's interest in the facts of law enforcement. However, a surveillance location case is usually a person, an eyewitness is testifying as to a location where they viewed the defendant doing some illegal activity, whereas an informant is telling law enforcement officials of a prior illegal activity that is the basis of a search warrant. The burden is on the defendant to show the need for disclosure in an informant's case, and there's four balancing factors that have to go into that consideration. The guilt or innocence versus the probable cause is the first factor. The informant here would have only stated information regarding probable cause. The second factor, the active role of assisting or witnessing the event. Defendant here was charged with possessing items, not with the previous illegal activity in which the informant told the police officers. The third factor is assisting the setup in Verley versus being merely a tipster. The informant here was a tipster to law enforcement officials as to illegal activity the defendant may be in. And the last was the informant's life or safety was jeopardized. Here there was a general safety concern, as the defendant was on bond for multiple felonies. Who was? The defendant was on bond. The defendant. Mr. Maldonado. He was on bond for multiple felonies. And as such, the trial court did not abuse its discretion when it found that the information that the informant had would be irrelevant to the case at bar. The defendant also takes issue with the wife's testimony being cut off regarding Dunning. However, this issue has been forfeited because there was no sufficient offer of proof regarding the information that she would inform the court regarding Dunning. The time frame was extremely remote. There was no nexus between what happened 18 months prior to what happened on July 13, 2011. And as such, the information would be too remote. Even if there was error, the defendant was not prejudiced in the court's ruling because the court did address whether other people may leave drugs and come back for them. That was the inference that the defendant was trying to elude throughout the entire trial in asking the wife multiple times, how many males lived here before your husband? How many people were in this residence? And the trial court rejected that inference as a substantial amount of heroin was recovered. They found it improbable that someone would leave behind such evidence. What significance is there to the fact that this significant 3.4 grams of heroin was secreted in the statute? It was closed. It was hidden in the statute. It was hidden, yes. How does that inform the court as to the defendant's knowledge that that hidden contraband was known to him? Well, constructive possession at the habitation of a person may be sufficient evidence of that. And the trial court here did find that the defendant's residence of that 4459 West Washington location was sufficient to prove his connection to that heroin. And here, in the right most of the votes to the people, and any rational trial fact could have found that the defendant was in constructive possession of those items as that was his location, his premises. So do you equate knowledge with control? Is it the same thing? I would not equate knowledge with control. So he would control the premises where the statute was found and because he controlled the premises where the statute was found, are you saying that he therefore knew what was inside the statute? There would be an inference of knowledge. And what would that inference flow from? The fact that he did reside there. And the trial court was able to look at that and determine the credibility of all the witnesses and make the determination. And here he found, the trial court did find that there was sufficient evidence that the defendant had constructive possession over those items. Correct. He found that because he found him guilty. But the struggle is finding the evidence that supports finding him guilty. So I guess under the State's position that if in a multifamily residence a parent has three children and one of the children brings in a bag of reefer and puts it in the bedroom, that the parent knows, because it's their house, that the reefer is present and the parent knowingly possesses the contraband. I would say that case is different because there are people that are specifically in that room. So that would be the child's room. And that would be like an exclusive control of that child where they can hide things from their parents, as kids may do. Like hide something in a statue that somebody may not know about? Possibly, yes. Yes. But here the trial court did find that there was sufficient evidence to find that knowledge as he did inhabit that residence. And there was no evidence of exclusive control from the defendant. The wife did not testify that that room was not defendant's. So we don't have anything excluding the defendant from that room. And viewing the evidence most favorable to the prosecution, any Russian retired felon could have found that evidence to be sufficient. If there are no other questions, for all these reasons and the reasons in the People's Brief, we ask that you affirm the defendant's three convictions for unlawful use or possession of a weapon by a felon and possession of a controlled substance with intent to deliver. Thank you, Ms. Pucci. Thank you. Mr. Weiber. Thank you, Your Honor. I would just briefly like to address, we have this sort of counterintuitive suggestion that Mrs. Maldonado is occasionally credible and occasionally not. I would like to point out, as far as that argument is concerned, what the circuit court actually found was, frankly, I don't believe the testimony of Mrs. Maldonado. Under all the circumstances, I find her testimony to be incredible. That's not a finding that there are certain things that are yeah and certain things that aren't. It's a finding that I think she's unbelievable. So insofar as the State is attempting to suggest that we can, well, we'll borrow a little bit here, but then we would lower the rest, it's simply not supported by the court's actual judgment. I would also just, to avoid any confusion, there was a reference to Mr. Maldonado being on bond for multiple felonies. I want to be very clear. The only evidence we have of any felonies were the particular felonies at issue in this case. He was charged with several counts, but he was not on bond in relation to any other felonies. In fact, Mr. Maldonado has not had a felony conviction since the 80s when he was a teenager, and he was convicted of possession of a stolen motor vehicle, and he has no violent felony convictions whatsoever. So, as we argue in our briefs, attempting to reach the inference that Mr. Maldonado was a dangerous individual from whom people need to be protected, there's simply a lack of evidence there entirely. Insofar as the state seeks to distinguish People v. Price, I would note that while the ultimate issue that People v. Price addressed was the surveillance location privilege, People v. Price was very explicit in stating we are determining the scope of the surveillance location privilege by determining the scope of the informant's privilege, and it was very explicit about that. I would also note, just briefly in regard to that argument, the state has taken this position that simply because they stood up and said the word privilege, the burden has shifted to the defense to suddenly come up with compelling evidence that this informant could change the entire case. But that's not what the statute says, and it's not what the law says. The statute says there are certain conditions in order for a privilege to apply. After all, most information isn't privileged.  that we consider so sensitive and important that they're privileged. And one of the key elements the statute says is the informant has to request confidentiality. We didn't even have an allegation in this case that the informant requested confidentiality. We certainly didn't have any evidence for that effect. Well, ironically, if the court had allowed the informant to testify, he may have provided critical evidence to the state's case about placing the defendant, in your version, in proximity to the contraband. Well, Your Honor, that is possible. The problem that we face here, of course, is the defense counsel never had an opportunity to know who this person was to determine what evidence they might have or might not. The state certainly knows they have the police records. I guess my point is that it's somewhat ironic that the defense is arguing that perhaps the missing evidence may have been critical to the prosecution's case. Well, Your Honor, we think that the missing evidence could have been critical to either side. And the problem is that we simply don't know because we don't know who the informant is and we don't know what they're going to say. And so that is our position on that. Moving on, I would, just briefly, there was a reference to this case, People v. Woods, that was not raised in the briefs. I'm not familiar with that case off the top of my head. If this court is looking to that, I'd be happy to provide some analysis on that in a supplemental brief. How much time do you need? Can you do it within seven days? Oh, certainly, yeah. I would just like to take a look at the case and provide this court with any... And, Ms. Pucci, if you'd like to respond, you have seven days thereafter to reply. Anything further, Counsel? Your Honor, oh, just a couple of things I wanted to mention briefly. There was a discussion regarding... Pardon me, sorry. There was a discussion regarding the drugs and there not being a sufficient proffer on this. There was a proffer that this person who previously lived in the house was known to possess heroin. Our position is that since, as Your Honor has pointed out, we have no idea when that heroin got in the house or how it got there. Evidence that there was somebody residing in the house even a year ago is certainly relevant to a determination of how that got in there. And, again, we look at how closely balanced this case is. So you're saying he made a sufficient offer of proof in this case? Yes, I would say the offer was sufficient to establish relevancy. And beyond that, Counsel certainly would have, I think, would have liked to establish further foundation, but at every time that he broached the subject, objections were sustained and he was prevented from doing so. So, Your Honor, as I throw in no further questions, for the reasons cited in our briefs and the reasons we've discussed today, we would respectfully ask this court to reverse Mr. Maldonado's convictions or, alternatively, to bribe for a new trial. And, again, as the informant issue is up, to either order disclosure or at the least order an in-camera hearing so that further information could be gathered. Thank you very much. I'd like to compliment the attorneys on their briefs and on their arguments. This matter will be taken under advisement and this court stands in recess.